IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 12-cv-00019-LTB-MEH

SHAYNA CROWELL,

    Plaintiff,

v.

DENVER HEALTH AND HOSPITAL AUTHORITY,

    Defendant.

_____

ORDER
_____

This case is before me on Defendant's Motion for Summary Judgment [Doc # 19] and Plaintiff's Partial Motion for Summary Judgment on Liability [Doc # 20] which raise common issues of fact and law. After consideration of the motions, all related pleadings, and the case file, I grant Defendant's motion in part and deny Plaintiff's motion for the reasons set forth below.

**I. Background**

For purposes of the motions, the following facts are undisputed unless otherwise noted.

Plaintiff was employed by Defendant as a paramedic dispatcher from March of 2008 to July 5, 2011. Defendant has an absenteeism policy which provides, in pertinent part, as follows:

> [Defendant] recognizes that a certain amount of absenteeism is unavoidable; however, frequent absences disrupt operations and patient care and may place an added burden on fellow employees.
> ...
>
> Leaving prior to the end of the scheduled shift or a shift the employee has agreed to work without prior arrangement (ie., request for PTO or vacation time) is considered absence, regardless of cause and is grounds for discipline.

...

> Generally, six occurrences of absences within a rolling twelve month period is considered excessive and will result in verbal warning; however, in some areas it may be necessary for the Corrective Action to be initiated upon a lower number of occurrences of absences, as determined by the manager of the department. Regardless of the number of absences that is defined as excessive, each subsequent occurrence of absence results in the issuance of Employee Corrective Action, up to and including termination. The twelve month period begins with the first occurrence of absence, and is commonly referred to as a "rolling" twelve month period. Multiple <u>consecutive</u> days of absence up to five consecutive work days are considered as one occurrence of absence.
>
> Occurrences of absence are separated by a return to work and working at least one full shift, or are of a duration of five consecutive work days. In the event the employee is absent five consecutive work days, then the sixth day absent is considered the first day of an additional occurrence of absence.

On February 5, 2011, Plaintiff injured her arm and back in automobile accident. While working a night shift on June 5-6, 2011, Plaintiff was examined by Defendant's paramedics after complaining of back, arm, and chest pain. The paramedics were concerned that Plaintiff might be suffering from a pulmonary embolism and recommended that she go to the hospital. Plaintiff left off her shift early to go to the hospital where it was determined that Plaintiff was not suffering from a pulmonary embolism. As of June 5-6, 2011, Plaintiff already had 5 absences for that rolling twelve month period.

When she returned to work the evening of June 6, 2011, Plaintiff 's supervisor advised her to apply for leave under the Family and Medical Leave Act (the "FMLA") for leaving her previous shift early. On June 17, 2011, Plaintiff submitted a request for FMLA leave for the period of June 6, 2011 to June 5, 2012. However, the original requested leave dates were subsequently crossed out on Plaintiff's leave request form and replaced with the dates of June 17, 2011 to July 17, 2011.

Plaintiff's health care provider, Dr. Jerry Cupps, completed a medical certification form in support of Plaintiff's request for FMLA leave and indicated that Plaintiff would be unable to work for a continuous period of time because of her injuries. Dr. Cupps also indicated that Plaintiff's condition would cause "episodic flare-ups periodically preventing [Plaintiff] from performing [her] job functions" that could occur up to 7 times a week and last for up to an entire day.

On July 1, 2011, Robin Ruschival, Defendant's leave of absence representative, approved Plaintiff for continuous medical leave retroactive to June 17, 2011 and continuing through July 17, 2011. Later that day, Plaintiff told Ms. Ruschival that she wanted intermittent rather than continuous FMLA leave. Ms. Ruschival advised Plaintiff that Dr. Cupps would need to complete a new medical certification and a return to work pass before she resume her job responsibilities.

On July 5, 2011, Dr. Cupps provided Ms. Ruschival with a release to return to work which stated that Plaintiff could return to work full-time without restriction and a doctor's note which stated that Plaintiff could work until she had surgery on her right shoulder after which she would need to take 2-4 weeks off from work. Dr. Cupps did not complete a new medical certification form for Plaintiff. In his deposition, Dr. Cupps testified that the pain from Plaintiff's injuries would require her "to get up, move around, change [her] position" while working as a dispatcher for Defendant but that Plaintiff's pain would not make it "medically necessary" for her to miss 1-2 hours a day of work.

Based on the documentation received from Dr. Cupps on July 5, 2011, as well as her telephone conversation with him that same day, Ms. Ruschival concluded that all of Plaintiff's

absences from work were subject to the regular attendance policy and not covered FMLA leave. Thus, Plaintiff's failure to work her full June 5-6, 2011 shift counted as her sixth absence for that rolling twelve month period.

Prior to June of 2011, Plaintiff had been disciplined twice for excessive absenteeism and once for violation of Defendant's email/internet policy. Defendant terminated Plaintiff's employment for violation of its absenteeism policy on July 5, 2011. Had Plaintiff's absence on June 5-6, 2011 qualified for FMLA leave, Plaintiff would not have been terminated.

## II. Standard of Review

The purpose of a summary judgment motion under Rule 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual

issue to be tried.  *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial.  *Celotex*, 477 U.S. at 323.  The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party.  *Anderson*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III. Analysis

Plaintiff asserts three claims against Defendant: (1) interference under the FMLA; (2) retaliation under the FMLA; and (3) failure to accommodate under the Americans with Disabilities Act (the "ADA").  Defendant argues that it is entitled to summary judgment on all of Plaintiff's claims while Plaintiff argues that she is entitled to summary judgment on the issue of Defendant's liability on her claims for interference under the FMLA and for violation of the ADA.

**A. Plaintiff's FMLA Interference Claim**

One of the elements of an FMLA interference claim is entitlement to FMLA leave. *Metzler v. Fed. Home Loan Bank of Topeka,* 464 F.3d 1164, 1180 (10th Cir. 2006).  An employee is entitled to FMLA leave if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29

U.S.C. § 2612(a)(1)(D). To be entitled to FMLA leave then, Plaintiff must demonstrate (1) that she suffers from a "serious health condition" (2) that makes her unable to perform the functions of her job. *See also Stoops v. One Call Commc'ns, Inc.,* 141 F.3d 309, 313 (7th Cir. 1998).

### 1. Presence of a "Serious Health Condition"

The FMLA defines the term "serious health condition" as "an illness, injury, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential treatment facility; or (B) continuing treatment by a health care provider." 29 U.S.C. §2611 (11).

Pursuant to the regulations, a "serious health condition involving continuing treatment by a health care professional" includes:

> (a) ... A period of incapacity of more than three, consecutive full calendar days, and any subsequent treatment or period of incapacity relating to the same condition that also involves:
> ...
>
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.
> ...
>
> (c) ... Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
>
> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider;
>
> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (3) May cause episodic rather than a continuing period of incapacity ....
> ...
>
> (e) ... Any period of absence to receive multiple treatments ... by a health care provider ..., for:

  (1) Restorative surgery after an accident of other injury ...

29 C.F.R. § 825.115 (a)(c) & (e).

  Plaintiff argues that she suffers from a "serious health condition involving continuing treatment by a health care professional" under each of the definitions set forth above. It is undisputed, however, that Plaintiff has never missed more than three consecutive days of work due to injuries she sustained in her February 5, 2011 automobile accident. The question then is whether Plaintiff's injuries qualify as a "serious health condition" under either 29 C.F.R. § 825.115(c) or (e).

  Defendant argues that Plaintiff does not have a chronic condition under 29 C.F.R. § 825.115(c) because she did not experience any episodes of incapacity, episodic or otherwise. In support of this argument, Defendant cites Dr. Cupps' July 5, 2011 statements that Plaintiff could return to work without restriction until she had surgery on her right shoulder. On his June 28, 2011 medical certification, however, Dr. Cupps opined that Plaintiff would experience "episodic flare-ups periodically preventing [Plaintiff] from performing [her] job functions" that could occur up to 7 times a week and last for up to an entire day. This opinion, though arguably inconsistent with Dr. Cupps' July 5, 2011 statements, could support a determination that Plaintiff suffered from a "serious health condition" on June 5-6, 2011 that was within the purview of the FMLA pursuant to 29 C.F.R. § 825.115(c). It does not, however, establish that Plaintiff satisfies the FMLA's "serious health condition requirement" as a matter of law. Rather, there are genuine issues of material fact that require this determination to be made at trial.

  As for whether Plaintiff also suffered from a "serious health condition" under 29 C.F.R. § 825.115(e)(1) based on Dr. Cupps' recommendation that Plaintiff undergo shoulder surgery,

there is a dearth of authority interpreting this regulatory provision. By the plain language of subsection (e)(1), however, I conclude that Plaintiff's failure to work her full shift on June5-6, 2011 so that she could seek treatment in the emergency room was not "for ... [r]estorative surgery after an accident" as a matter of law. Nonetheless, as set forth above, there are triable issues as to whether Plaintiff suffered from a "serious health condition" under 29 C.F.R. § 825.115(c) that preclude summary judgment in favor of either party on this issue.

### 2. Plaintiff's Ability to Perform the Functions of her Job

An employee is unable to perform the functions of the employee's position

> where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position within the meaning of the [ADA] and the regulations at 29 C.F.R. § 1630.2(n). An employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment.

29 C.F.R. § 825.123(a).

I have already concluded that are genuine issue of material fact as to whether Plaintiff suffered from a "serious health condition" within the purview of the FMLA as a result of injuries she sustained in her February 5, 2011 automobile accident. If she did, then I further conclude that there are genuine issues of material fact as to whether her failure to work her full shift on June 5-6, 2011so that she could go to the emergency room on the advice of paramedics who treated her was necessitated by that condition.

Additionally, Dr. Cupps opined that Plaintiff would experience "episodic flare-ups periodically preventing [Plaintiff] from performing [her] job functions" that could occur up to 7 times a week and last for up to an entire day. This opinion, though arguably inconsistent with Dr. Cupps' July 5, 2011 statements, could support a determination that Plaintiff was unable to

perform one or more of the essential functions of her position on June 5-6, 2011. Dr. Cupps' June 28, 2011 opinions do not, however, establish this element of Plaintiff's FMLA interference claim as a matter of law.

According, there are genuine issues of material fact that require the determination of whether Plaintiff was unable to perform the functions of her job on June 5-6, 2011 to be made at trial.

**B. Plaintiff's FMLA Retaliation Claim**

To establish a prima facie case of FMLA retaliation, Plaintiff must prove: (1) that she availed herself of a protected right under the FMLA; (2) that she was adversely affected by an employment decision; and (3) that there was a causal connection between the two actions. *Robert v. Bd. of Cnty. Comm'rs of Brown Cnty., Kansas,* 691 F.3d 1211, 1219 (10th Cir. 2012).

FMLA retaliation claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-4 (1973). *Id.* Thus, if Plaintiff can establish a prima facie case of FMLA retaliation, the burden then shifts to Defendant to articulate a legitimate reason for the adverse employment action. *Id.* If Defendant does so, the burden shifts back to Plaintiff to present evidence showing that Defendant's stated reason is pretextual. *Id.*

It is undisputed that Plaintiff can prove the elements of a prima facie case of FMLA retaliation based on her termination after she requested FMLA leave for her absence on June 5-6, 2011. It is also undisputed that Defendant can meet its burden of articulating a legitimate reason for terminating Plaintiff based on its absenteeism policy. Resolution of the pending summary judgment motions therefore turns on whether Plaintiff can present sufficient evidence that

Defendant's reliance on its absenteeism policy as the basis for her termination is pretextual, or "so incoherent, weak, inconsistent, or contradictory that a rational fact finder could conclude [it is] unworthy of belief." *Johnson v. Weld Cnty., Colo.,* 594 F.3d 1202, 1211 (10th Cir. 2010) (citations omitted).

To demonstrate pretext, Plaintiff focuses on the conduct of her supervisor, Gary Bryskiewicz, who (1) set her termination in motion; (2) previously suspended her for absenteeism; and (3) knew of her prior use of FMLA leave. Plaintiff argues that Mr. Bsyskiewicz's actions raise a factual question as to whether he retaliated against her for "taking advantage of the system." I disagree.

In analyzing pretext under the *McDonnell Douglas* framework, I ask not whether the Defendant's proffered reason for its decision to terminate Plaintiff was "wise, fair or correct, but whether [Defendant] honestly believed [its reason] and acted in good faith on those beliefs." *Rivera v. City & County of Denver,* 365 F.3d 912, 925 (10th Cir.2004) (citations omitted). *See also Johnson, supra* (to support inference of pretext, plaintiff "must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda").

Although I have concluded that there are triable issues regarding whether Plaintiff was entitled to FMLA leave on June 5-6, 2011, I am satisfied that Defendant genuinely believed she was not based on the information provided by Dr. Cupps on July 5, 2011 and that she was therefore in violation of its absenteeism policy. Lack of pretext is further demonstrated by, among other things, Plaintiff's previous use of FMLA leave for a different condition; Defendant's initial approval of continuous FMLA leave for Plaintiff; Defendant's ongoing

communications with Plaintiff and Dr. Cupps regarding Plaintiff's condition; and Plaintiff's admissions that she never heard any representative of Defendant comment negatively on her request for FMLA leave.

Because Plaintiff is unable to present sufficient evidence that Defendant's reliance on its absenteeism policy as a basis for her termination was pretextual, Plaintiff's claim for retaliation under the FMLA fails as a matter of law.

## C. Plaintiff's ADA Claim

"To state a prima facie case for discrimination under the ADA, [Plaintiff] must establish that: (1) she is disabled; (2) she was qualified, with or without reasonable accommodation, to perform the essential function of her job; and (3) her employer discriminated against her because of her disability." *Robert*, 691 F.3d at 1216. The discrimination prong her of ADA claim requires Plaintiff to show that she suffered "an adverse employment action because of [her] disability." *E.E.O.C. v. C.R. England, Inc.,* 644 F.3d 1028,1038 (10th Cir. 2011).

Defendant first argues that Plaintiff's ADA claim fails as a matter of law because she was able to perform the essential functions of her job and therefore did not need any accommodation. This argument actually supports Plaintiff's ability to satisfy the second prong of her prima facie case. To the extent that Defendant is challenging Plaintiff's ability to prove she is disabled within the meaning of the ADA, this determination is largely independent of Plaintiff's ability to perform the essential functions of her job. *See* 42 U.S.C. §12102(1) (a person is disabled within the meaning of the ADA if such person has "(A) a physical or mental impairment that substantially limits one or more major life activities of such [person]; (B) a record of such an impairment; or (3) [been] regarded as having such an impairment."). Moreover, as previously

discussed, there are inconsistencies that preclude Dr. Cupps' statements and opinions from being dispositive on issues relating to Plaintiff's condition or ability to do her job.

Defendant next argues that Plaintiff's ADA claim fails as a matter of law because she never requested any accommodation from Defendant. Such a request is a prerequisite to triggering an employer's duty to provide reasonable accommodations. *C.R. England,* 644 F.3d at 1049. The request or notice provided by the employee need not follow set formalities so long as it makes clear to the employer that the employee wants assistance for the employee's disability. *Id.*

Here, Plaintiff alleges that her supervisor recommended that she apply for FMLA leave to cover her absence on June 5-6, 2011 when she returned to work her next shift. Plaintiff subsequently submitted a leave of absence request form for June 6, 2011 though the requested dates were later changed. This evidence may be sufficient to establish that Plaintiff adequately requested that Defendant accommodate her alleged disability by excusing her absence on June 5-6, 2011 so that she would not be in violation of Defendant's absenteeism policy. Plaintiff, however, is not entitled to judgment on this issue as a matter of law because there are factual issues regarding Plaintiff's alleged disability, her communications with her supervisor and other representatives of Defendant regarding her alleged disability and failure to complete her June 5-6, 2011 shift, and the circumstances surrounding her June 6, 2011 visit to the emergency room including whether this trip was necessitated by her alleged disability.

Finally, Defendant argues that Plaintiff 's ADA claim fails as a matter of law because the nature and duration of the modified work schedule requested by Plaintiff is indefinite. Defendant's argument might have some merit based on Plaintiff's Amended Complaint which

alleges that Defendant "should have provided [Plaintiff] at least the FMLA's 480 hours of intermittent leave as a reasonable accommodation." Amended Complaint, ¶ 32. However, in the motions for summary judgment, Plaintiff argues that the accommodation she requested was that her absence on June 5-6, 2011 be excused. "An allowance of time for medical care or treatment may constitute a reasonable accommodation." *Taylor v. Pepsi-Cola Co.,* 196 F.3d 1106, 1110 (10th Cir. 1999). With this limitation then, Defendant's argument based on the nature of the requested accommodation has no merit.

Although I have rejected Defendant's arguments in support of summary judgment in its favor on Plaintiff's ADA claim, it does not follow that Plaintiff is entitled to summary judgment on this claim. In addition to the factual issues noted with respect to whether Plaintiff adequately requested an accommodation of her alleged disability, Plaintiff has failed to present any argument or evidence to demonstrate that Defendant terminated her because of her disability under the burden-shifting framework of *McDonnell Douglas, supra,* as previously discussed in the context of Plaintiff's FMLA retaliation claim. *See Taylor,* 196 F.3d at 1109 (10th Cir. 1999) ("The burden shifting analysis established in *[McDonnell Douglas]* applies to ADA claims."). The merits of Plaintiff's ADA claim will therefore have to be determined at trial.

## IV. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Defendant's Motion for Summary Judgment [Doc # 19] is GRANTED IN PART and DENIED IN PART;

2. Judgment shall enter in favor of Defendant and against Plaintiff on Plaintiff's claim for retaliation under the FMLA; and

13

      3.  Plaintiff's Partial Motion for Summary Judgment on Liability [Doc # 20] is DENIED.

Dated: March   1  , 2013 in Denver, Colorado.

                                                BY THE COURT:

                                                  s/Lewis T. Babcock  
                                                LEWIS T. BABCOCK, JUDGE