# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
### Judge John L. Kane

Case No. 12-cv-0019-JLK

SHANYA CROWELL,

     Plaintiff,

vs.

DENVER HEALTH AND HOSPITAL AUTHORITY,

     Defendant.

_____

# JURY INSTRUCTIONS
_____

## INSTRUCTION NO. 1.1

## OPENING INSTRUCTIONS

Before the trial begins, I am giving you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

During the trial you will hear me use a few terms that you may not have heard before.  I will briefly explain them to you.  If, during the course of the trial, there are other terms you don't recognize, please let me know and I will explain them.  The party who sues is called the plaintiff.  In this case, the plaintiff is Shayna Crowell.  The party who is being sued is called the defendant.  In this case, the defendant is Denver Health and Hospital Authority, which will often be abbreviated to Denver Health.

You will sometimes here me refer to "counsel."  "Counsel" is another way of saying "lawyer" or "attorney."

When I "sustain" an objection, I am excluding that evidence from this trial for a good reason.  When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.

When I say "admitted into evidence" or "received into evidence," I mean that this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.  I am not indicating in any way that you must accept it, but only that you may consider accepting or rejecting it.

By your verdict, you will decide disputed issues of fact.  I will decide all questions of law that arise during the trial.  Before you begin your deliberation at the close of the case, I will instruct you one final time on the law that you must follow and apply.

During the course of the trial I may have to interrupt the proceedings to confer with the attorneys about the rules of law that should apply.  Sometimes we will talk briefly, at the bench.  But some of these conferences may take more time, so I will excuse you from the courtroom.  I will try to avoid such interruptions whenever possible, but please be patient even if the trial seems to be moving slowly because conferences often actually save time in the end.

You are to consider all the evidence received in this trial and only the evidence received at trial.  It will be up to you to decide what evidence to believe and how much of any witness's testimony to accept or reject.

After you have heard all the evidence on both sides, the parties will make their final arguments.  These arguments are not evidence.  After these closing arguments, I will again instruct you on the rules of law you are to use in reaching your verdicts, and then you will retire to decide your verdicts.

During the course of the trial I may ask a question of a witness.  If I do, that does not mean I have any opinion about the facts in the case.  I am only trying to bring out facts that you may consider.  From time to time during the trial I may also direct your attention to particular instructions of law.

Ordinarily, the attorneys will develop all the relevant evidence that will be necessary for you to reach your verdicts.  However, in rare situations, a juror may believe

a question is critical to reaching a decision on a necessary element of the case.  In that situation, you may write out a question and provide it to the courtroom deputy at the next recess.  I will then consider that question with the lawyers.  If it is determined to be a proper and necessary question, I will ask it.  If I do not ask it, I will tell you why and explain why such an answer cannot be considered in your deliberations.

If you would like to take notes during the trial, you may.  On the other hand, you are not required to take notes.

If you decide to take notes, be careful not to get so involved in note taking that you become distracted, and remember that your notes will not necessarily reflect exactly what was said, so your notes should be used only as memory aids.  Therefore, you should not give your notes precedence over your independent recollection of the evidence.  You should also not be unduly influenced by the notes of other jurors.  If you do take notes leave them in the jury room at night and do not discuss the contents of your notes until you begin deliberations.

During the course of the trial, you may not talk with any witness, or with the parties, or with any of the lawyers at all.  In addition, during the course of the trial you should not talk about the trial with anyone else.  Also, you should not discuss the merits of this case among yourselves until you have gone to the jury room to make your decision at the end of the trial.  It is important that you wait until all the evidence is received and you have again heard my instructions on the controlling rules of law before you deliberate among yourselves.  In other words, keep an open mind and form no opinions until you can consider all the evidence and the instructions of law together.

During the course of the trial you will receive all the evidence you legally may consider to decide the case.  Gathering any information on your own that you think might be helpful is against the law and would be a violation of your oath.  Do not engage in any outside reading on this case, even including dictionaries or a bible, do not attempt to visit any places mentioned in the case, and do not in any other way try to learn about the case outside the courtroom. Ignore all case related publicity.

It is not fair to the parties to have one or more jurors deciding this case on information that is not presented in court.  This would make a mockery of our trial system.  It would make irrelevant rules of evidence and the right of cross examination.

You will be surprised to learn that, despite the repeated giving of this instruction by trial judges, there were instances in which jurors disobeyed this instruction.  When this is brought to the attention of the court, it frequently results in a mistrial and a new trial, which means the first jury's time was completely wasted.

I can tell you this.  If *I* sacrificed several days or weeks of *my* time to serve as a trial juror, and *I* followed the court's instructions not to talk to people or do outside research on the case, and then learned that one of my fellow jurors did *not*, which caused the court to order a mistrial and new trial after we had reached a verdict, I would be FURIOUS and RESENTFUL of that juror.  I trust you would feel the same way.

The parties, attorneys, witnesses, court, and trial jurors only want to do this one time.  Therefore, please confine your consideration of this case to what happens in this courtroom.  When the case is over, you will be free to say or do anything you wish concerning this case.  Until then, no outside research or discussion.

There will also not be any outside technology.  I wish I did not have to dwell on this topic, but recent events around the United States and recent technologies require me to point out that some common practices and habits many of you enjoy are strictly forbidden in your role as jurors.  You may not, under any circumstances, have your cell phones, blackberries, iPhones or the like on when court is in session.  Whether you are here or away from the court during recess you may not "google, twitter, tweet, text message, blog, post" or anything else with those gadgets about or concerning anything to do with this case.  To do so could cause a mistrial, meaning all of our efforts would have been wasted and we would have to start all over again with a new trial before a new jury.  If you were to cause a mistrial by violating these orders, you could be subject to paying all the costs of these proceedings and perhaps punished for contempt of court.  What you may do is advise anyone who needs to know, such as family members, employers, employees, schools, teachers, or daycare providers that you are a juror in a case and the judge has ordered you not to discuss it until you have reached a verdict and been discharged from the case.  At that point you will be free to discuss this case or investigate anything about it to your heart's delight.

If during the course of the trial you believe there is anything you need to know, please write down your request and give it to the courtroom deputy.  She will give it to me and we will do our best to attend to it.

Fairness to all concerned requires that all of us connected with this case deal with the same information and with nothing other than the same information.  The reason for

this is that your decision in this case must be made solely on the evidence presented at the trial.

Finally, I note that the court reporter is making stenographic notes of everything that is said. This is basically to assist any appeals. You will *not* have a typewritten copy of the testimony available for your use during deliberations. On the other hand, any exhibits admitted at trial will be available to you during your deliberations.

**INSTRUCTION NO. 1.2**

**STATEMENT OF THE CASE**

The following is a brief summary of the claims in this case:

Ms. Crowell worked as a paramedic dispatcher for Denver Health.  She claims that her termination from employment for absenteeism was in violation of two federal laws, the Family and Medical Leave Act and the Americans with Disabilities Act, which under certain circumstances allow an employee to take leave from work without adverse disciplinary action.

Denver Health asserts that Ms. Crowell's absences were not protected under either law and that it lawfully terminated Ms. Crowell for violation of its absenteeism policy.

## INSTRUCTION NO. 1.3

## ORDER OF TRIAL

The case will proceed as follows:

First, the lawyers for each side may make opening statements. What is said in the opening statements is not evidence, but is simply an introduction to help you understand what each party expects the evidence to show.

After the opening statements, Plaintiff will present evidence in support of her claims and Defendant's lawyers may cross-examine the witnesses. At the conclusion of Plaintiff's case, Defendant may introduce evidence and Plaintiff's lawyers may cross-examine the witnesses. Defendant is not required to introduce any evidence or to call any witnesses. If Defendant chooses to introduce evidence, Plaintiff may then present rebuttal evidence.

After the evidence is presented, the parties' lawyers make closing arguments explaining what they think the evidence has shown.  What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict.  You will then decide the case.

## INSTRUCTION NO. 1.3.1

## DUTY TO FOLLOW INSTRUCTIONS

You, as jurors, are the judges of the facts.  But in determining what actually happened – that is, in reaching your decision as to the facts – it is your sworn duty to follow all of the rules of law as I explain them to you.

You may not disregard or give special attention to any one instruction, or question the wisdom or correctness of any rule I may state to you.  You must not substitute or follow your own notion or opinion as to what the law is or ought to be.  It is your duty to apply the law as I explain it to you, regardless of the consequences.  We are bound to apply the law as it is given to us by the higher courts and the legislature.

In your deliberations you must see to it that no one else on the jury ignores the instructions or attempts to decide the case on anything other than the law and the evidence.  It is always to be born in mind that our collective commitment is to equal justice under the law.  Matters of race, creed, color, nationality and gender have no place in this process.  To the best of your ability you are to judge others as you would want others to judge you under the law I give you.  The very heart of justice is that all apply the same law to the same evidence and leave our personal desires out of it.

You should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be.  That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without bias, prejudice or sympathy.  That was the promise you made and the oath you took.

## INSTRUCTION NO. 1.4

## EVIDENCE – GENERAL

It will be your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts. You will hear the evidence, decide what the facts are, and then apply those facts to the law I give you.  That is how you will reach your verdict. In doing so, you must follow the law whether you agree with it or not.

At no time during the trial will I suggest what I think your verdict should be nor do I want you to guess or speculate about my views of what verdict you should render.

You will decide what the facts are from the evidence that the parties will present to you during the trial.  That evidence will consist of the sworn testimony of witnesses on both direct and cross-examination, regardless of who called the witness; documents and other things received into evidence as exhibits; and any facts on which the lawyers agree or which I may instruct you to accept as true.

The following things are not evidence and you must not consider them as evidence in deciding the facts of this case:

1.  Statements and arguments by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of the facts controls.

2.  Questions and objections by the lawyers are not evidence.  Lawyers have a duty to their clients to object when they believe a question is improper

11

under the rules of evidence.  You should not be influenced by the objection or by my ruling on it.

3.       The lawyers (may) have highlight(ed) certain parts of some exhibits. While an admitted exhibit is evidence, the highlights are not.  It is for you to determine the significance of the highlighted parts.

4.       Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered by you.

5.       Anything you may see or hear when the Court is not in session is not evidence, even if what you see or hear is done or said by one of the parties or by one of the witnesses.

You are to consider only the evidence in the case.  But in your consideration of the evidence, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts that you find have been proved, such reasonable inferences as seem justified in the light of your experience.  Inferences are inductions or conclusions your reason and common sense lead you to draw from the facts established by the evidence in the case.  Inferences reached from facts not proved at trial, however, are impermissible.

## INSTRUCTION NO. 1.5

## EVIDENCE - DIRECT AND CIRCUMSTANTIAL

Evidence can be either direct or circumstantial.  Direct evidence is testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is indirect evidence; that is, it is proof of one or more facts from which one can find that another fact exists or is true.

As a general rule, the law makes no distinction between direct and circumstantial evidence, and you should consider both kinds of evidence in deciding this case.  It is for you to decide how much weight to give to any evidence, direct or circumstantial.

The rules of evidence control the facts you may consider.  When one lawyer asks a question or offers an exhibit and an opposing lawyer thinks that it is not permitted by the rules of evidence, the opposing lawyer may object. If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been or what the exhibit might have shown.

**INSTRUCTION NO. 1.6**

**FILING OF LAWSUIT AND PLEADINGS**

The fact that Plaintiff filed this lawsuit is not evidence that the Defendant did anything wrong.  The fact that Plaintiff complains she has been damaged is not evidence that she has been damaged or that the Defendant violated the law.  You cannot say, "Well, there must be something wrong here or the case would not be in court."  This would be improper.

## INSTRUCTION 1.7

## BURDEN OF PROOF

This is a civil, rather than criminal, case and therefore Plaintiff has the burden of proving her claim by what is called a preponderance of the evidence. "By a preponderance of the evidence" means that no matter who produces the evidence, when you consider the claim of Plaintiff in light of all the facts, you believe that Plaintiff's claim is more likely true than not true. To put it differently, if you were to put all of the evidence in favor of Plaintiff and all of the evidence in favor of Defendant on opposite sides of the scale, Plaintiff would have to make the scale tip to her side. If Plaintiff fails to meet this burden, your verdict must be for Defendant.

In defense of the claims that Defendant violated Plaintiff's rights under the two federal laws, Defendant has asserted an affirmative defense, which will be described to you more fully later.  An affirmative defense is different from a denial of the claim.  You should treat an affirmative defense in the same way you treat Plaintiff's claim.  That is, Defendant, as the party asserting the affirmative defense, has the burden of proving that defense by the same standard, that is, of proving that the affirmative defense is more likely true than not true.

In evaluating whether Plaintiff, on the one hand, and Defendant, on the other hand, have met their respective burdens on their claims and defenses, you should also know that the law does not require parties to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matter at issue at this trial. Nor does the law require parties to produce as exhibits all papers or other things mentioned in the evidence in the case.

**INSTRUCTION NO. 1.8**

**QUESTIONS BY JURORS –**

**PERMITTED**

Jurors normally do not ask a witness questions.  However, you may ask important questions during the trial under certain conditions.

If you feel that the answer to your question would be helpful in understanding the issues in the case, please write down your question during a break and give it to my courtroom deputy.  I will make a copy of your note for the lawyers and speak privately with them to decide whether the question is proper under the law and how best to address it.

If the question is proper, we will repeat it in open court and someone will answer it.  If there is some reason why the question cannot be answered, I will tell you what that reason is.

## INSTRUCTION NO. 1.9

## PUBLICITY DURING TRIAL

If there is publicity about this trial, you must ignore it.  Do not read anything or listen to any television or radio programs about the case.  You must decide this case only from the evidence presented here in the courtroom.

## INSTRUCTION NO. 1.10

## JUDGE'S QUESTIONS TO WITNESSES

During the trial, I may sometimes ask a witness questions. Please do not assume that I have any opinion about the subject matter of my questions. They are intended only to clarify or to repeat something I may have missed.

**INSTRUCTION NO. 1.11**

**BENCH CONFERENCES**

It may be necessary for me to talk to the lawyers about an issue of law out of your hearing.  The purpose of these conferences is to decide how certain legal matters are to be treated.  We will not be discussing factual matters.  The lawyers and I will do what we can to limit the number and length of these conferences.

**INSTRUCTION NO. 1.12**

**INFERENCES DEFINED**

You are to consider only the evidence in the case.  However, you are not limited to the statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are inductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

## INSTRUCTION NO. 1.13

## CREDIBILITY OF WITNESSES

In deciding the facts of this case, you will have to decide which witnesses to believe and which witnesses not to believe. You may believe everything a witness says, only part of it, or none of it.

In considering the testimony of any witness, you may consider:

1.      The witness's opportunity and ability to see or hear or know the things to which the witness testified;

2.      The quality of the witness's memory;

3.      The witness's manner while taking the oath and while testifying;

4.      Whether the witness had an interest in the outcome of the case or any motive, bias or prejudice;

7.      Whether the witness's testimony is contradicted by anything the witness said or did at another time, by the testimony of other witnesses, or by other evidence;

6.      How reasonable the witness's testimony was in light of all the evidence; And

7.      Any other facts that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify to that fact.

If you believe a witness has willfully lied regarding any material fact, you have the

right to disregard all or any part of that witness's testimony.

**INSTRUCTION NO. 1.14**
**SINGLE WITNESS**

The testimony of a single witness that produces in your minds belief in the

likelihood of truth is sufficient for the proof of any fact, and would justify a verdict in

accordance with such testimony, even though a number of witnesses may have testified

to the contrary, if, after consideration of all the evidence in the case, you hold greater

belief in the accuracy and reliability of the one witness.

**INSTRUCTION NO. 1.15**

**EQUALITY OF PARTIES**

All persons are equal before the law regardless of race, national origin, citizenship, or whether the party is a corporation or government entity.  I tell you that all parties are equal before the law to remind you that you must base any decision in this case on the law and facts, not outside factors such as race, national origin, citizenship, or corporate status.

**INSTRUCTION NO. 1.16**

**STATUS OF A CORPORATION OR GOVERNMENT ENTITY**

All persons are equal before the law.  A corporation or government entity is considered by the law to be a person.  Corporations and government entities are entitled to the same fair and conscientious consideration by you as any physical person.

Corporations and government entities can act only through their officers and employees.  Any act or omission of an officer or employee while acting within the scope of his or her employment or authority is the act or omission of the corporation or government entity.

**INSTRUCTION NO. 1.17**

**EXPERT WITNESSES**

A witness qualified as an expert by education, training, or experience may state opinions.  You should judge expert testimony just as you would judge any other testimony.  You may accept it or reject it, in whole or in part.  You should give the testimony the importance you think it deserves, considering the witness's qualifications, the reasons for the opinions, and all of the other evidence in the case.

**INSTRUCTION NO. 1.18**

**BUSINESS JUDGMENT RIGHTS**

Defendant has asserted that it terminated Plaintiff for violation of its absenteeism policy.  You are not to second guess the wisdom of that policy or substitute your judgment for that of the Defendant.  An employer has discretion to enforce employment policies unless doing so would violate the employee's rights under federal law.

**INSTRUCTION NO. 2.1**

**FAMILY MEDICAL LEAVE ACT**

One of Plaintiff's two claims in this lawsuit is brought under the "Family and Medical Leave Act," also called the "FMLA." The FMLA entitles eligible employees to take up to twelve weeks of unpaid leave during any twelve month period for several reasons, including the employee's own serious health condition that makes her unable to perform the functions of her position.

**INSTRUCTION NO. 2.2**

**FAMILY MEDICAL LEAVE ACT –**

**DEFINITION – INTERMITTENT OR REDUCED LEAVE**

The FMLA allows an employee to take leave for a serious health condition on an intermittent or reduced schedule basis. "Intermittent leave" is defined as leave taken in separate blocks of time due to a single qualifying reason and may include leave periods from an hour or more to several weeks.

**INSTRUCTION NO. 2.3**

**FAMILY MEDICAL LEAVE ACT – ELEMENTS OF CLAIM**

In order for the Plaintiff to prevail on her FMLA claim, you must find that she has proved all of the following by a preponderance of the evidence.

1. That she requested leave in the manner required by the FMLA and Defendant's policy;

2. That she had a serious health condition;

3. That her serious health condition made her unable to work;

4. That her doctor certified to Defendant that her serious health condition made her unable to work on the date in question; and

5. That Defendant terminated Plaintiff's employment because of an absence that was caused by that serious health condition.

## INSTRUCTION NO. 2.4

## FAMILY MEDICAL LEAVE ACT – REQUEST FOR LEAVE

When the timing of need for leave is not foreseeable, the FMLA requires an employee to request leave as soon as practicable, taking into account all of the facts and circumstances in the individual case.  When the employee becomes aware of a need for FMLA leave, it should be practicable for the employee to provide notice either the same day or the next day.  An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave.  When an employee seeks leave due to a FMLA-qualifying reason, for which the employer has previously provided FMLA-protected leave, the employee must specifically reference the qualifying reason for the leave or the need for FMLA leave.  An employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave.  Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied. For example, if it would have been practicable for an employee to have given the employer notice of the need for leave very soon after the need arises consistent with the employer's policy, but instead the employee provided notice two days after the leave began, then the employer may delay FMLA coverage of the leave by two days.

**INSTRUCTION NO. 2.5**

**FAMILY MEDICAL LEAVE ACT – DEFINITION - SERIOUS HEALTH**

**CONDITION**

For purposes of Plaintiff's FMLA claim in this lawsuit, a serious health condition

is any period of incapacity or treatment for such incapacity due to a chronic condition

which:

(1) Requires periodic visits (at least twice a year) for treatment by a health care

provider, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a

single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (e.g., asthma,

diabetes, epilepsy, etc.).

**INSTRUCTION NO. 2.6**

**FAMILY MEDICAL LEAVE ACT – DEFINITION - UNABLE TO WORK**

For purposes of Plaintiff's FMLA claim in this lawsuit, an employee is unable to work where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position. An employee who must be absent from work to receive medical treatment for her serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment.

**INSTRUCTION NO. 2.7**

**FAMILY MEDICAL LEAVE ACT – MEDICAL CERTIFICATION**

Under the FMLA, if an employer requests a medical certification, it is the employee's responsibility to provide the employer with complete and sufficient certification and failure to do so may result in the denial of FMLA leave. If an employee submits a complete and sufficient certification signed by a health care provider, the employer may contact the health care provider for clarification of the meaning of the certification. For purposes of determining whether Plaintiff's doctor certified to Defendant that she had a serious health condition which made her unable to work on the date in question, you should consider both the written form that he completed and any other oral or written statements he made to Defendant concerning those issues. Defendant was entitled to rely upon the doctor's statements.

**INSTRUCTION NO. 2.8**

**AMERICANS WITH DISABILITIES ACT**

Plaintiff's second claim in this lawsuit is brought under the "Americans with

Disabilities Act," also called the "ADA." The ADA makes it unlawful to fail to make

reasonable accommodations to the known physical or mental limitations of an otherwise

qualified employee with a disability unless the employer can demonstrate that the

accommodation would impose an undue hardship on the operation of its business.

**INSTRUCTION NO. 2.9**

**AMERICANS WITH DISABILITIES ACT – ELEMENTS OF CLAIM**

In order for Plaintiff to prevail on her ADA claim that Defendant failed to reasonably accommodate her disability, you must find that she has proved all of the following by a preponderance of the evidence:

1. That Plaintiff was a qualified individual with a disability;

2. That Defendant knew of Plaintiff's disability;

3. That Plaintiff requested an accommodation that was necessary for her disability;

4. That Plaintiff's doctor certified to Defendant that she had a disability and the requested accommodation was necessary;

5. That the accommodation requested was reasonable; and

6. That Defendant failed to provide the accommodation requested and unreasonably failed to provide any other accommodation.

**INSTRUCTION NO. 2.10**

**AMERICANS WITH DISABILITIES ACT – QUALIFIED - DEFINED**

The term "qualified" means that, at the time of the employment decision affecting

her, the Plaintiff:

1. Satisfied the required skill, experience, education or other job-related

requirements for her position; and

2. Could perform the essential functions of her position, with or without

reasonable accommodations.

**INSTRUCTION NO. 2.11**

**AMERICANS WITH DISABILITIES ACT – ESSENTIAL FUNCTIONS - DEFINED**

The term "essential functions" means the fundamental duties of the position held by

Plaintiff at the time of her termination. To determine whether a function was essential to

the position that Plaintiff held, you must consider:

1. The Defendant's judgment as to whether the function was essential; and/or

2. Any written description that was in existence before the dispute arose.

In addition to these factors, you may also consider:

1. The purpose of the position;

2. The number of other employees who were available to perform the particular

functions;

3. The degree of expertise or skill required to perform the particular functions;

4. The amount of time spent performing the particular functions;

5. The consequences to the Defendant of not requiring Plaintiff to perform the

functions; and/or

6. Any other factor supported by the evidence.

If supported by the evidence, regular and predictable attendance on the job can be an

essential function.

**INSTRUCTION NO. 2.12**

**AMERICANS WITH DISABILITIES ACT – DISABILITY - DEFINED**

Plaintiff must prove by a preponderance of the evidence that she had a

"disability." A person has a "disability" under the ADA if she, at the time of the

employment decision affecting her, had a physical impairment that substantially limited

one or more major life activities.

**INSTRUCTION NO. 2.13**

**AMERICANS WITH DISABILITIES ACT – PHYSICAL OR MENTAL
IMPAIRMENT AND MAJOR LIFE ACTIVITIES – COURT DETERMINATION**

The Court has determined that the Plaintiff had the following physical impairment:

automobile accident injuries to her arm and back.  The Court has determined that the

major life activities involved in this case were: lifting, sitting, and walking.

**INSTRUCTION NO. 2.14**

**AMERICANS WITH DISABILITIES ACT – SUBSTANTIALLY LIMITED –
DEFINED**

It is Plaintiff's burden to prove that her physical impairment substantially limited

her major life activities of lifting, walking, or sitting activities as compared to the average

person in the general population.

**INSTRUCTION NO. 2.15**

**AMERICANS WITH DISABILITIES ACT –**

**REASONABLE ACCOMMODATION - DEFINED**

Under the ADA, it is unlawful for an employer to not make a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability. If supported by the evidence, "reasonable accommodation" may include a reasonable time off for medical care or treatment. However, a request for an accommodation which would not allow Plaintiff to perform the essential functions of her position is not reasonable.

**INSTRUCTION NO. 2.16**

**AMERICANS WITH DISABILITIES ACT – QUALIFIED - DEFINED**

The term "qualified" means that, at the time of the employment decision affecting

her, the Plaintiff:

1. Satisfied the required skill, experience, education or other job-related

requirements for her position; and

2. Could perform the essential functions of her position, with or without

reasonable accommodations.

**INSTRUCTION NO. 2.17**

**AMERICANS WITH DISABILITIES ACT**

**INTERACTIVE PROCESS-DEFINED**

Under the ADA, the employer and the employee are required to engage in an interactive process to determine what actions would be reasonable to accommodate the employee's disability.  The employer's duty to engage in the interactive process is triggered when the employee makes it clear she wants assistance for her disability.  An employee's request for time off for medical care may constitute a request to take part in the interactive process.  The request does not have to be in writing, mention the ADA, or use the words "reasonable accommodation."  The interactive process includes a responsibility to provide requested information that is necessary for evaluating what might be a reasonable accommodation.

## INSTRUCTION NO. 2.18

## AMERICANS WITH DISABILITIES ACT – MEDICAL CERTIFICATION

Under the ADA, if an employer requests a medical certification, it is the employee's responsibility to provide the employer with complete and sufficient certification and failure to do so may result in the denial of ADA leave. If an employee submits a complete and sufficient certification signed by a health care provider, the employer may contact the health care provider for clarification of the meaning of the certification. For purposes of determining whether Plaintiff's doctor certified to Defendant that she had a "disability" under the ADA that required accommodation on the date in question, you should consider both the written form that he completed and any other oral or written statements he made to Defendant concerning those issues. Defendant was entitled to rely upon the doctor's statements.

**INSTRUCTION NO. 2.19**

**AMERICANS WITH DISABILITIES ACT - HONEST BELIEF DEFENSE**

When an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection.

**INSTRUCTION NO. 3.1**

**AMERICANS WITH DISABILITIES ACT –**

**COMPENSATORY DAMAGES**

If you find in favor of Plaintiff on her claim under the ADA, then you must

consider whether Plaintiff has proved:

1.      That Defendant intentionally violated the ADA, which means that

Defendant acted with deliberate indifference to the strong likelihood that Plaintiff's

termination would violate her rights under the ADA; and

2.      That Plaintiff suffered emotional distress, psychological losses,

inconvenience, and loss of enjoyment of life that was caused by Defendant's violation of

the ADA.

If you find that Plaintiff has proved both of those elements, you may then award

compensatory damages for injuries that the Plaintiff proved were caused by the

Defendant's wrongful conduct. The damages that you award must be fair compensation,

no more and no less.

In calculating compensatory damages for Plaintiff's claim under the Americans

with Disabilities Act, you should not consider any back pay or front pay that the Plaintiff

lost. The award of back pay and front pay, should you find the Defendant liable on the

Plaintiff's claims, will be calculated and determined by the Court.

You may award damages for any emotional distress, psychological losses,

inconvenience, and loss of enjoyment of life that Plaintiff experienced as a consequence

of the wrongful conduct. No evidence of monetary value of such intangible things as pain

and suffering has been, or need be, introduced into evidence. There is no exact standard for setting the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence presented at trial.

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in making an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on speculation or guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

**INSTRUCTION NO. 3.2**

**FAILURE TO MITIGATE DAMAGES**

Plaintiff is required to make reasonable efforts to minimize damages. In this case, the Defendant claims that Plaintiff failed to minimize damages because Plaintiff failed to use reasonable efforts to find employment after discharge.

It is the Defendant's burden to prove that Plaintiff failed to make reasonable efforts to minimize her damages. This defense is proven if you find by a preponderance of the evidence that:

1. There were or are substantially comparable positions which Plaintiff could have discovered and for which Plaintiff was qualified; and

2. Plaintiff failed to use reasonable diligence to find suitable employment. "Reasonable diligence" does not require that Plaintiff be successful in obtaining employment, but only that she make a good faith effort at seeking employment.

If the Defendant has proven the above, then you must reduce any award of damages by an amount that represents the damages that Plaintiff could have avoided if she had made reasonable efforts to mitigate her damages.

49

## INSTRUCTION NO. 4.1

## GENERAL INTRODUCTION

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law. It is your duty to follow the law as I will state it and to apply it to the facts as you find them from the evidence in the case. Do not single out one instruction as stating the law, but consider the instructions as a whole. You are not to be concerned about the wisdom of any rule of law stated by me. You must follow and apply the law.

Each of you has a copy of the instructions to consult whenever you wish. The lawyers may properly refer to some of the governing rules of law in their arguments. If there is any difference between the law stated by the lawyers and as stated in these instructions, you are governed by my instructions.

Nothing I say in these instructions indicates that I have any opinion about the facts. You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

**INSTRUCTION NO. 4.2**

**JURY DELIBERATIONS – GENERAL INSTRUCTIONS**

It is your duty to find the facts from all the evidence in the case. To those facts, you must apply and follow the laws contained in these instructions whether you agree with them or not. Your decision is called a verdict and is reached by applying those laws to the facts as you find them. You have taken an oath promising to do just so.

You must follow all of these instructions and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything I may say or do any suggestions as to what verdict you should return. Your verdict is a matter entirely for you to decide.

**INSTRUCTION NO. 4.3**

**JURY – DELIBERATIONS**

When you go to the jury room to begin your deliberations, you must elect one of you to serve as your Presiding Juror. He or she will preside over your deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreements if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it with your fellow jurors, and listened to the views of your fellow jurors. I offer some suggestions on how you might do this in the next jury instruction, entitled "Jury – The Deliberations Process."

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict, but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight of the evidence simply to reach a verdict.

## INSTRUCTION NO. 4.4

## JURY – THE DELIBERATIONS PROCESS

Once you have elected your Presiding Juror as directed by the previous instruction, you are free to proceed as you agree is appropriate. Therefore, I am not directing you how to proceed, but I offer the following suggestions that other juries have found helpful so that you can proceed in an orderly fashion, allowing full participation by each juror, and arrive at a verdict that is satisfactory to each of you.

First, it is the responsibility of the Presiding Juror to encourage good communication and participation by all jurors and to maintain fairness and order. Your Presiding Juror should be willing and able to facilitate productive discussions even when disagreements and controversy arise.

Second, the Presiding Juror should let each of you speak and be heard before expressing his or her own views.

Third, the Presiding Juror should never attempt to promote nor permit anyone else to promote his or her personal opinions by coercion or intimidation or bullying of others.

Fourth, the Presiding Juror should make certain that the deliberations are not rushed to reach a conclusion.

If the Presiding Juror you select does not meet these standards, he or she should voluntarily step down or be replaced by a majority vote.

After you select a Presiding Juror you should consider electing a secretary who will tally the votes, help keep track of who has or hasn't spoken on the various issues, make certain that all of you are present whenever deliberations are under way and otherwise assist the Presiding Juror.

Some juries are tempted to start by holding a preliminary vote on the case to "see where we stand." It is most advisable, however, that no vote be taken before a full discussion is had on the issue to be voted on, otherwise you might lock yourself into a certain view before considering alternative and possibly more reasonable interpretations of the evidence. Experience has also shown that such early votes frequently lead to disruptive, unnecessarily lengthy, inefficient debate and ineffective decision-making.

Instead, I suggest the Presiding Juror begin your deliberations by directing the discussion to establishing informal ground rules for how you will proceed. These rules should assure that you will focus upon, analyze and evaluate the evidence fairly and efficiently and that the viewpoints of each of you is heard and considered before any decisions are made. No one should be ignored. You may agree to discuss the case in the order of the questions presented in the special verdict form or in chronological order or according to the testimony of each witness. Whatever order you select, however, it is advisable to be consistent and not jump from one topic to another.

To move the process of deliberation along in the event you reach a controversial issue, it is wise to pass it temporarily and move on to the less controversial ones and then come back to it. You should then continue through each issue in the order you have agreed upon unless a majority of you agrees to change the order.

It is very helpful, but certainly not required of you, that all votes be taken by secret ballot. This will help you focus on the issues and not be overly influenced by personalities. Each of you should also consider any disagreement you have with another juror or jurors as an opportunity for improving the quality of your decision and therefore should treat each other with respect. Any differences in your views should be discussed

calmly and, if a break is needed for that purpose, it should be taken. As I mentioned at the beginning of this trial, each of you is responsible for making sure that no juror bases a decision on matters that are not evidence.

Each of you should listen attentively and openly to one another before making any judgment. This is sometimes called "active listening" and it means that you should not listen with only one ear while thinking about a response. Only after you have heard and understood what the other person is saying should you think about a response. Obviously, this means that, unlike TV talk shows, you should try very hard not to interrupt. If one of your number is going on and on, it is the Presiding Juror who should suggest that the point has been made and it is time to hear from someone else.

You each have a right to your individual opinion, but you should be open to persuasion. When you focus your attention and best listening skills, others will feel respected and, even while they may disagree, they will respect you. It helps if you are open to the possibility that you might be wrong or at least that you might change your mind about some issues after listening to other views.

Misunderstanding can undermine your efforts. Seek clarification if you do not understand or if you think others are not talking about the same thing. From time to time the Presiding Juror should set out the items on which you agree and those on which you have not yet reached agreement.

In spite of all your efforts, it is indeed possible that serious disagreements may arise. In that event, recognize and accept that "getting stuck" is often part of the decision making process. It is easy to fall into the trap of believing that there is something wrong with someone who is not ready to move toward what may be an emerging decision. Such

a belief is not helpful. It can lead to focusing on personalities rather than the issues. It is best to be patient with one another. At such times slower is usually faster. There is a tendency to set deadlines and seek to force decisions. Providing a break or more time and space, however, often helps to shorten the overall process.

You may wish from time to time to express your mutual respect and repeat your resolve to work through any differences. With such a commitment and mutual respect, you will most likely render a verdict that leaves each of you satisfied that you have indeed rendered justice.

# INSTRUCTION NO. 4.5

## COMMUNICATIONS WITH JUDGE

If it becomes necessary during your deliberations to communicate with me, you may send a folded note through the court security officer, signed by one of you. Do not disclose the content of your note to the court security officer. No member of the jury should hereafter attempt to communicate with me except by signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court. You are not to tell anyone – including me – how the jury stands, numerically or otherwise, until you have reached a unanimous verdict and I have discharged you.

If you send a note to me containing a question or request for further direction, please bear in mind that responses take considerable time and effort. Before giving an answer or direction I must first notify the attorneys and bring them back to the court. I must confer with them, listen to arguments, research the legal authorities, if necessary, and reduce the answer or direction to writing.

There may be some question that, under the law, I am not permitted to answer. If it is improper for me to answer the questions, I will tell you that. Please do not speculate about what the answer to your question might be or why I am not able to answer a particular question.

In some instances jurors request that certain testimony be read to them. This cannot be done as it is inappropriate for the court to single out testimony. In those circumstances you must rely upon your own recollection.

**INSTRUCTION NO. 4.6**

**UNANIMOUS AGREEMENT AND JURY VERDICT FORM**

You each have copies of a document called a Jury Verdict Form. You should answer the questions in the Jury Verdict Form as directed. You must reach unanimous agreement on the answers to each of the questions you are directed in the form to answer. Upon arriving at an agreement, your Presiding Juror will insert each answer on the Jury Verdict Form. After all of the questions have been answered as directed by the Jury Verdict Form, your Presiding Juror will date the Jury Verdict Form, sign it, and then ask all of the other jurors to sign it.

After you have filled out the Jury Verdict Form in this manner, your Presiding Juror should advise the court security officer stationed outside the jury room that you have reached a verdict.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 12-cv-0019-JLK

SHANYA CROWELL,

     Plaintiff,

vs.

DENVER HEALTH AND HOSPITAL AUTHORITY,

     Defendant.

_____

**VERDICT**

_____

**WE THE JURY,** in the above-captioned action, render our verdict in response to the following interrogatories:

**PART ONE.  FAMILY AND MEDICAL LEAVE ACT CLAIM**

     **Question 1:** Did Ms. Crowell prove by a preponderance of the evidence that she requested leave in the manner required by the FMLA and Denver Health's policy?

        _____ YES          _____ NO

**If your answer is "NO," you have found a verdict for Denver Health on Ms. Crowell's FMLA claim.  Do not answer any further questions in Part One, and proceed to Part Two. If your answer is "YES," proceed to Question 2.**

     **Question 2:** Did Ms. Crowell prove by a preponderance of the evidence that she had a serious health condition as defined in the FMLA?

        _____ YES          _____ NO

**If your answer is "NO," you have found a verdict for Denver Health on Ms. Crowell's FMLA claim.  Do not answer any further questions in Part One, and proceed to Part Two. If your answer is "YES," proceed to Question 3.**

**Question 3:**   Did Ms. Crowell prove by a preponderance of the evidence that her serious health condition made her unable to work?

\_\_\_\_\_ YES                    \_\_\_\_\_ NO

**If your answer is "NO," you have found a verdict for Denver Health on Ms. Crowell's FMLA claim.  Do not answer any further questions in Part One, and proceed to Part Two. If your answer is "YES," proceed to Question 4.**

**Question 4:**   Did Ms. Crowell prove by a preponderance of the evidence that her doctor certified to Denver Health that her serious health condition made her unable to work on the date in question?

\_\_\_\_\_ YES                    \_\_\_\_\_ NO

**If your answer is "NO," you have found a verdict for Denver Health on Ms. Crowell's FMLA claim.  Do not answer any further questions in Part One, and proceed to Part Two. If your answer is "YES," proceed to Question 5.**

**Question 5:**   Did Ms. Crowell prove by a preponderance of the evidence that Denver Health terminated her employment because of an absence that was caused by that serious health condition?

\_\_\_\_\_ YES                    \_\_\_\_\_ NO

**If your answer is "NO," you have found a verdict for Denver Health on Ms. Crowell's FMLA claim.  If your answer is "YES," you have found a verdict for Ms. Crowell on her FLMA claim. Do not answer any further questions in Part One, and proceed to Part Two.**

**PART TWO.  AMERICANS WITH DISABILITIES ACT CLAIM**

**Question 6:** Did Ms. Crowell prove by a preponderance of the evidence that she was a qualified individual with a disability as defined in the ADA?

\_\_\_\_\_ YES                    \_\_\_\_\_ NO

**If your answer is "NO," you have found a verdict for Denver Health on Ms. Crowell's ADA claim.  Do not answer any further questions in Part Two, and proceed to Part Three.  If your answer is "YES," proceed to Question 7.**

61

**Question 7:**   Did Ms. Crowell prove by a preponderance of the evidence that Denver Health knew of her disability?

\_\_\_\_\_ YES                    \_\_\_\_\_ NO

**If your answer is "NO," you have found a verdict for Denver Health on Ms. Crowell's FMLA claim.  Do not answer any further questions in Part Two, and proceed to Part Three.  If your answer is "YES," proceed to Question 8.**

**Question 8:**   Did Ms. Crowell prove by a preponderance of the evidence that she requested an accommodation that was necessary for her disability?

\_\_\_\_\_ YES                    \_\_\_\_\_ NO

**If your answer is "NO," you have found a verdict for Denver Health on Ms. Crowell's FMLA claim.  Do not answer any further questions in Part Two, and proceed to Part Three.  If your answer is "YES," proceed to Question 9.**

**Question 9:**   Did Ms. Crowell prove by a preponderance of the evidence that her doctor certified to Denver Health that she had a disability and the requested accommodation was necessary?

\_\_\_\_\_ YES                    \_\_\_\_\_ NO

**If your answer is "NO," you have found a verdict for Denver Health on Ms. Crowell's FMLA claim.  Do not answer any further questions in Part Two, and proceed to Part Three.  If your answer is "YES," proceed to Question 10.**

**Question 10:**   Did Ms. Crowell prove by a preponderance of the evidence that her requested accommodation was reasonable?

\_\_\_\_\_ YES                    \_\_\_\_\_ NO

**If your answer is "NO," you have found a verdict for Denver Health on Ms. Crowell's FMLA claim.  Do not answer any further questions in Part Two, and proceed to Part Three.  If your answer is "YES," proceed to Question 11.**

**Question 11:**   Did Ms. Crowell prove by a preponderance of the evidence that Denver Health failed to provide the accommodation requested and unreasonably failed to provide any other accommodation?

_____ YES                         _____ NO

**If your answer is "NO," you have found a verdict for Denver Health on Ms. Crowell's FMLA claim.  Do not answer any further questions in Part Two, and proceed to Part Three.  If your answer is "YES," proceed to Question 12.**

**Question 12:**   Do you find that Denver Health honestly believed that it was terminating Ms. Crowell's employment for absences that were not covered by the ADA as a reasonable accommodation for her disability?

_____ YES                         _____ NO

**If your answer is "YES," you have found a verdict for Denver Health and Hospital Authority on Ms. Crowell's ADA claim.  Do not answer any further questions in Part Two, and proceed to Part Three.  If your answer is "NO," you have found a verdict for Ms. Crowell on her ADA claim.  Proceed to Question 13.**

**Question 13:**   Did Ms. Crowell prove by a preponderance of the evidence that Denver Health intentionally violated the ADA?

_____ YES                         _____ NO

**If your answer is "YES," proceed to question 14. If your answer is "NO," do not answer any further questions in Part Two, and proceed to Part Three.**

**Question 14:**   Did Ms. Crowell prove by a preponderance of the evidence that she suffered damages for emotional distress, psychological losses, inconvenience, and loss of enjoyment of life that was caused by Denver Health's violation of the ADA?

_____ YES                         _____ NO

If your answer is "YES," in what amount: $_____

**If your answer is "YES," proceed to Question 15.  If your answer is "NO," proceed to Part Three.**

**Question 15:**   Did Denver Health prove by a preponderance of the evidence that Ms. Crowell failed to mitigate her damages for emotional distress, psychological losses,

inconvenience, and loss of enjoyment of life?

_____ YES                    _____ NO

If your answer is "YES," what amount of damages for emotional distress, psychological losses, inconvenience, and loss of enjoyment of life do you find that Ms. Crowell could have avoided if she had made reasonable efforts to mitigate her damages: $_____.
(The amount of damages you awarded in response to question 15 will be reduced by any amount that you enter in this blank.)


**PART THREE.  CERTIFICATION**

**Proceed to sign the Certification section on the next page.**

## CERTIFICATION

**If your answers to the foregoing questions constitute your true verdict in this case, sign and date the following section.  Once you have done so, inform the Court by note that you are ready to return to the courtroom for announcement of your verdict.**

By our signatures and our answers to these questions, we hereby certify that the answers on this form represent the unanimous verdict of the jury.

_____   _____

_____   _____

_____   _____

_____   _____

_____   _____

_____   _____

Dated:  August \_\_\_, 2013